UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-61529-CIV-DIMITROULEAS

YAUHEN BRASAUS a/k/a JAMES ERICSSON,
individually and on behalf of all similarly
situated individuals,

    Plaintiff,

v.

FRESHPOINT OF SOUTH FLORIDA, INC.,

    Defendant.
_____/

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

The Defendant, Freshpoint of South Florida, Inc. ("Freshpoint" or "Defendant"), and the Plaintiff, Yauhen Brasaus a/k/a James Ericsson, individually and on behalf of all similarly situated individuals ("Plaintiffs") (Plaintiffs and Defendant are collectively referred to as the Parties), jointly request that the Court approve the Parties' settlement of the above-captioned matter. Because the Plaintiffs' action arises under the Fair Labor Standards Act (FLSA), the Parties' settlement must be approved by this Court and reduced to a final judgment in order to provide the Defendant with a valid release. The grounds upon which this Motion is based are as follows:

1.    Plaintiffs brought this action against Freshpoint pursuant to the FLSA for alleged unpaid overtime compensation. On February 12, 2016, the Court conditionally certified the case as a collective action. (Doc. No. 36). A total of 25 individuals opted in to the lawsuit, including the named Plaintiff. However, 4 of these individuals have withdrawn their consents to join, *see* (Dkt. 31; Dkt. 62; Dkt. 63; Dkt. 70), and 2 should have their claims dismissed with prejudice

because, after reviewing their pertinent time and pay records, the Parties determined that these individuals are not owed any unpaid overtime.[1]

2.      Thus, this Settlement Agreement covers only the following Plaintiffs: Yauhen Brasaus a/k/a James Ericsson ("Brasaus"), John Augustin ("Augustin"), Jesse Baldwin ("Baldwin"), Franklin Baltodano ("Baltodano"), Woodchill Bien-Aimé("Bien-Aimé"), Rodney Blanc ("Blanc"), Leonardo Castillo ("Castillo"), Willio Estimeau ("Estimeau"), Chrisnel Faugue ("C. Faugue"), Domingue Faugue ("D. Faugue"), Jonathas Forgues ("J. Forgues"), Joshua Fogler ("Fogler"), Edouard Forgues ("E. Forgues"), Reginald Jean ("Jean"), Rithmer Jean-Baptiste ("Jean Baptiste"), Gemat Normil ("Normil"), Bermane Philemond ("Philemond"), Max Philo ("Philo"), and Travis Walker ("Walker").

3.      The Plaintiffs, who worked or work as Order Selectors for Freshpoint, alleged in the Complaint that they were similarly situated, compensated on a piece-rate basis, and were not paid one and one-half their regular rates for hours worked over 40. Freshpoint denied any and all liability and further denied the Plaintiffs are entitled to the damages claimed. Among other defenses, Freshpoint disputed that the Plaintiffs are owed one and one-half their regular rates of pay for hours worked over 40. Freshpoint maintained that the Plaintiffs, as piece-rate workers, are owed only half of their regular rates of pay for hours worked over 40. Freshpoint also maintained that under its piece-rate system, the Plaintiffs were compensated over and beyond what they were owed. Freshpoint further argued that it acted in good faith and had reasonable grounds for believing that any alleged acts or omissions did not violate the FLSA. Lastly, Freshpoint maintained that the existence of too many individualized issues related to job duties and compensation would result in the Court decertifying Plaintiffs' Conditional Class. Because of these contested issues, and others, and to avoid the costs and uncertainty of litigation, the

---

[1] Those individuals are Rodner Blanc and Dante Schuler.

Parties have entered into the Settlement Agreement, which provides for settlement and dismissal of all claims brought by the Plaintiffs against Freshpoint, with prejudice. The Settlement Agreement is attached as Exhibit "A."

4. Pursuant to the Parties' Settlement Agreement, the Plaintiffs agree to accept from Freshpoint payments totaling $115,000.00 (the Settlement Payment), in full and final settlement and satisfaction of their claims against Freshpoint existing prior to the execution of the Settlement Agreement, including, but not limited to, their claims for attorneys' fees and costs. The Settlement Payment constitutes the sole and maximum sum to be paid by Freshpoint to the Plaintiffs and their attorneys

5. The Settlement Agreement provides that Brasaus will receive $1,934.93 in alleged back pay, $1,934.93, in liquidated damages, and $200.00 in consideration for Brasaus's general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

6. The Settlement Agreement provides that Agustin will receive $1,041.83 in alleged back pay, $1,041.83, in liquidated damages, and $200.00 in consideration for Augustin's general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

7. The Settlement Agreement provides that Baldwin will receive $736.72 in alleged back pay, $736.72, in liquidated damages, and $200.00 in consideration for Baldwin's general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

8. The Settlement Agreement provides that Baltodano will receive $698.14 in alleged back pay, $698.14, in liquidated damages, and $200.00 in consideration for Baltodano's

general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

9. The Settlement Agreement provides that Bien-Aimé will receive $1,046.21 in alleged back pay, $1,046.21, in liquidated damages, and $200.00 in consideration for Bien-Aimé's general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

10. The Settlement Agreement provides that Blanc will receive $795.08 in alleged back pay, $795.08, in liquidated damages, and $200.00 in consideration for Blanc's general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

11. The Settlement Agreement provides that Castillo will receive $785.07 in alleged back pay, $ 785.07, in liquidated damages, and $200.00 in consideration for Castillo's general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

12. The Settlement Agreement provides that Estimeau will receive $1,370.92 in alleged back pay, $1,370.92, in liquidated damages, and $200.00 in consideration for Estimeau's general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

13. The Settlement Agreement provides that C. Faugue will receive $2,124.13 in alleged back pay, $2,124.13, in liquidated damages, and $200.00 in consideration for C. Faugue's general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

14. The Settlement Agreement provides that D. Faugue will receive $4,722.99 in alleged back pay, $4,722.99, in liquidated damages, and $200.00 in consideration for D. Faugue's general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

15. The Settlement Agreement provides that J. Forgues will receive $3,694.64 in alleged back pay, $3,694.64, in liquidated damages, and $200.00 in consideration for J. Forgues' general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

16. The Settlement Agreement provides that Fogler will receive $3.67 in alleged back pay, $3.67, in liquidated damages, and $200.00 in consideration for Fogler's general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

17. The Settlement Agreement provides that E. Forgues will receive $4,658.12 in alleged back pay, $4,658.12, in liquidated damages, and $200.00 in consideration for E. Forgues' general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

18. The Settlement Agreement provides that Jean will receive $18.59 in alleged back pay, $18.59, in liquidated damages, and $200.00 in consideration for Jean general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

19. The Settlement Agreement provides that Jean-Baptiste will receive $369.23 in alleged back pay, $369.23, in liquidated damages, and $200.00 in consideration for Jean-Baptiste's general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

20. The Settlement Agreement provides that Normil will receive $165.57 in alleged back pay, $165.57, in liquidated damages, and $200.00 in consideration for Normil's general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

21. The Settlement Agreement provides that Philemond will receive $1,968.09 in alleged back pay, $1,968.09, in liquidated damages, and $200.00 in consideration for Philemond's general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

22. The Settlement Agreement provides that Philo will receive $542.12 in alleged back pay, $542.12, in liquidated damages, and $200.00 in consideration for Philo's general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

23. The Settlement Agreement provides that Walker will receive $47.07 in alleged back pay, $47.07, in alleged liquidated damages, and $200.00 in consideration for Walker's general release of claims against Freshpoint and the additional covenants set forth in the Settlement Agreement.

24. Additionally, the Settlement Agreement provides that Freshpoint agrees to pay $61,553.88 to Johnson Becker PLLC, in full and final settlement of the Plaintiffs' attorneys' fees and costs. The attorneys' fees and costs were negotiated separately from the underlying amounts and without regard to the amounts paid to settle the Plaintiffs' claims. These fees are based on the number of hours worked by Plaintiffs' counsel in this case.

25. All Parties are represented by labor and employment counsel with extensive experience in FLSA litigation. The terms, contents, conditions and effects of the Settlement

Agreement have been fully explained by them to their respective clients, and the Plaintiffs have accepted the terms and conditions of the Settlement Agreement and settlement amount in lieu of the uncertainty of litigation.

26. The Court may approve the Parties' Settlement Agreement as it is both fair and reasonable. There were disputed issues between the Parties, and the settlement negotiated and reached by the Parties reflects a reasonable compromise of those issues.

**WHEREFORE**, the Parties request that the Court approve the Settlement Agreement and dismiss this action with prejudice.

## MEMORANDUM OF LAW
### THIS COURT SHOULD APPROVE THE PARTIES' SETTLEMENT AGREEMENT BECAUSE IT IS A FAIR AND REASONABLE COMPROMISE OF THE DISPUTE OVER THE PLAINTIFFS' FLSA CLAIMS.

There are two ways in which claims under the FLSA may be settled and released by employees. First, Section 216(c) of the FLSA allows employees to settle and waive their claims if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. See 29 U.S.C. § 219(c); Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under Section 216(b) of the FLSA, the employee may settle and release an FLSA claim if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. Lynn's Food Stores, 679 F.2d at 1353; see also D.A. Schulte, Inc. v. Gangi, 328 U.S. 108 (1946); Jarrard v. Southeastern Shipbuilding Corp., 163 F.2d 960, 961 (5th Cir. 1947). In detailing the circumstances justifying court approval of an FLSA settlement in the litigation context, the Eleventh Circuit has stated:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

Lynn's Food Stores, 679 F.2d at 1354 (footnote omitted). Thus, a district court must scrutinize the settlement to ensure that it is a fair and reasonable resolution of a bona fide dispute. See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc., 18 F.3d 1527, 1531 n.6 (11th Cir. 1994) (recognizing that, when determining whether a settlement is fair and reasonable, courts should consider: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel). A court "must take an active role in approving the settlement agreement to ensure that it is not the result of the employer using its superior bargaining position to take advantage of the employee," and, if the court concludes that it is fair and reasonable, the agreement should be approved. See Rakip v. Paradise Awnings Corp., 514 Fed.Appx. 917, 919-20 (11th Cir. 2013).

Furthermore, the FLSA provides that courts may, in their sound discretion, "award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." 29 U.S.C. § 260; see also Patterson v. Acad. Fire Prot., Inc., No. 3:13-cv-87-J-34JBT, 2014 WL 169812, at *6 (M.D. Fla. Jan. 8, 2014) (adopting report and recommendation to approve FLSA settlement agreement providing no liquidated damages in light of parties' dispute regarding whether plaintiff was entitled to such damages). This provision applies "if the

8

employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA. 29 U.S.C. § 260; see also Cusumano v. Maquipan Int'l, Inc., 390 F. Supp. 2d 1216, 1222 (M.D. Fla. 2005) ("section 260 provides an employer with a 'good faith' defense to a claim for liquidated damages"); Rodriguez v. Farm Stores Grocery, Inc., 518 F. 3d 1259, 1272 (11th Cir. 2008) (explaining that section 260 amended the FLSA to provide "a safe harbor for an employer who can establish that it acted in good faith and under the reasonable belief that it was in compliance with the FLSA"). If the employer cannot prove good faith, the liquidated damages amount shall be equal to the employee's unpaid minimum wages or unpaid overtime compensation. 29 U.S.C. § 216(b). Freshpoint has asserted the "good faith" defense, among numerous other defenses, in this case. Thus, reliance upon section 260 would be appropriate. Particularly in light of the numerous disputes in this lawsuit, the Court should approve the Parties' Settlement Agreement because it is both fair and a reasonable compromise of the Plaintiffs' disputed claims against Freshpoint.

    **A.    The Parties' Settlement Is Fair And Reasonable Given The Disputed Issues In The Case And The Considerable Expense Of Additional Litigation.**

In this case, it is evident that the proposed settlement is both fair and reasonable. This Settlement Agreement arises out of an adversarial action brought by the Plaintiffs, in which the Plaintiffs contended that they were compensated on a piece-rate basis and were not paid one and one-half their regular rates for hours worked over 40. Freshpoint denied any and all liability and further denied the Plaintiffs are entitled to the damages claimed. Specifically, Freshpoint disputed that the Plaintiffs are owed one and one-half their regular rates of pay for hours worked over 40. Frehpoint maintained that the Plaintiffs, as piece-rate workers, are owed only half of their regular rates of pay for hours worked over 40. Freshpoint also maintained that under its

piece-rate system, the Plaintiffs were compensated over and beyond what they were owed. Freshpoint also raised numerous other defenses, including that Freshpoint acted in good faith. In light of the many significant disputed issues in connection with the Plaintiffs' unpaid overtime claims, the Parties agreed that the Plaintiffs' and, concomitantly, Freshpoint's likelihood of success on the merits was, at best, uncertain. As a result, the Parties negotiated a settlement that they believe reflects a reasonable compromise of the disputed issues.

### B. The Parties Engaged In Extensive Negotiations, Culminating In A Fair And Reasonable Settlement.

Recognizing there are disputed issues in this case and in an attempt to avoid costly litigation to both Parties, the Parties engaged in settlement discussions and presented their respective positions. After multiple rounds of negotiations, the Plaintiffs agreed to settle their FLSA claims against Freshpoint. Also, in this case, Freshpoint asserted it acted in good faith and had reasonable grounds for believing that any alleged acts or omissions did not violate the FLSA, and thus, the parties could negotiate any amount of liquidated damages up to the amount of damages being recovered by the Plaintiffs. See Patterson, 2014 WL 169812, at *1,*6. Despite the applicability of section 260, however, the Parties have ultimately agreed to settle for an award of liquidated damages equal to the amount of back pay received. This amount is more than fair, particularly since Freshpoint contends that the Plaintiffs were not entitled to the overtime compensation alleged.

In addition to the sums being paid to the Plaintiffs to resolve their FLSA claims, Freshpoint has also agreed to pay to each Plaintiff an additional $200.00 in consideration for a release of any other claims each Plaintiff may have against Freshpoint arising out of his or her affiliation with Freshpoint through the date of the execution of the Settlement Agreement and for the other covenants set forth in the Settlement Agreement. The Settlement Payment and

allocation of the Settlement Payment reflect the Parties' beliefs that additional litigation is likely to be protracted and expensive, given the claims and defenses that have been asserted. The Plaintiffs have been independently represented and counseled by their attorneys throughout the litigation and settlement process, and the Plaintiffs each voluntarily agreed to the terms of the Parties' Settlement Agreement.

### C. Plaintiffs' Attorneys' Fees And Costs.

Pursuant to the Parties' Settlement Agreement, Freshpoint agrees to pay the Plaintiffs' counsel, Johnson Becker PLLC, a total of $61,553.88 for the Plaintiffs' attorneys' fees and costs. Plaintiffs' attorneys represent that this agreed payment of the Plaintiffs' attorneys' fees and costs is reasonable.[2] See 29 U.S.C. § 216(b). "When determining a reasonable amount for attorney's fees, the judge is considered an expert on the matter." Shannon v. Saab Training, USA, LLC, No. 6:08-cv-803-Orl-19DAB, 2009 WL 1773808, at *4 (M.D. Fla. June 23, 2009).

Plaintiffs have been represented by counsel since the inception of this matter. Throughout this litigation, the Plaintiffs' attorneys have engaged in case analysis, legal and factual research, the drafting of pleadings, including their motion for conditional certification, the issuance of notice to potential opt-ins, and conducted settlement negotiations, while expending significant time advocating on behalf of the Plaintiffs. Moreover, the amount for payment of the Plaintiffs' attorneys' fees and costs was agreed to separately and without regard to the amounts paid to settle the Plaintiffs' claims. Therefore, the Parties seek the Court's approval of the Settlement Agreement, dismissal of Rodner Blanc's and Dante Schuler's claims with prejudice, and dismissal of the instant action with prejudice.

---

[2] The Plaintiffs' counsel represent that no sums will be deducted from the amount to be paid directly to the Plaintiffs pursuant to the Parties' Settlement Agreement. Additionally, Freshpoint does not contest the amount of attorneys' fees and costs that the Plaintiffs' counsel stand to receive under the Settlement Agreement. Freshpoint takes no position, however, on the reasonableness of the amount of attorneys' fees and costs being recovered by the Plaintiffs' counsel.

## CONCLUSION

The Parties jointly and respectfully request that this Court approve the Parties' Settlement Agreement and dismiss the instant action with prejudice.

Dated this 5th[th] day of July, 2016.

| | |
|---|---|
| s/ William F. Cash, III | s/ Kevin W. Shaughnessy |
| Brandon L. Bogle, Esq. | Kevin W. Shaughnessy |
| Florida Bar No.: 0052624 | Florida Bar No.: 0473448 |
| E-Mail: bbogle@levinlaw.com | E-Mail: kshaughnessy@bakerlaw.com |
| William F. Cash III, Esq. | Salomon Laguerre |
| Florida Bar No.: 0068443 | Florida Bar No.: 0092470 |
| E-Mail: bcash@levinlaw.com | E-Mail: slaguerre@bakerlaw.com |
| **LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A** | **BAKER & HOSTETLER LLP** |
| 316 South Baylen Street, Suite 600 | 200 South Orange Avenue |
| Pensacola, FL 32591 | Suite 2300 |
| Telephone: 850-435-7043 | Orlando, FL 32802 |
| Facsimile: 850-435-7020 | Telephone: 407-649-4000 |
| | Facsimile: 407-841-0168 |
| David H. Grounds (Minn. Bar No. 285742) | **ATTORNEYS FOR DEFENDANTS** |
| Jacob R. Rusch (Minn. Bar No. 391892) | |
| **JOHNSON BECKER, PLLC** | |
| 33 South Sixth Street, Suite 4530 | |
| Minneapolis, Minnesota 55402 | |
| Telephone: (612) 436-1800 | |
| Facsimile: (612) 436-1801 | |
| dgrounds@johnsonbecker.com | |
| jrusch@johnsonbecker.com | |

Jason J. Thompson (Mich. Bar No. P47184)
*(Pending Admission Pro Hac Vice)*
Jesse L. Young (Mich. Bar No. P72614)
*(Pending Admission Pro Hac Vice)*
**SOMMERS SCHWARTZ, P.C.**
One Town Square, Suite 1700
Southfield, Michigan 48076
Telephone: 248-355-0300
jthompson@sommerspc.com
jyoung@sommerspc.com

**ATTORNEYS FOR THE PLAINTIFF**

12

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 5, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following:

Brandon L. Bogle, Esq.
William F. Cash III, Esq.
316 South Baylen Street, Suite 600
Pensacola, FL 32591

David H. Ground, Esq.
Jacob R. Rusch, Esq.
**JOHNSON BECKER, PLLC**
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402

Jason J. Thompson, Esq.
Jesse L. Young, Esq.
**SOMMERS SCHWARTZ, P.C.**
One Town Square, Suite 1700
Southfield, Michigan 48076

                                                                                  s/ Kevin W. Shaughnessy
                                                                                  Kevin W. Shaughnessy

608902832.1